COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

EL PASO COMMUNITY COLLEGE
DISCTRICT,

§ No. 08-14-00179-CV

Appellant, § Appeal from the

v. § County Court at Law No. 5

KELLY DURAN, § of El Paso County, Texas

Appellee. § (TC#2011-656)

§

## **O P I N I O N**

Kelly Duran sued El Paso Community College District (EPCC) pursuant to the Texas Tort

Claims Act (TTCA) for a broken shoulder she sustained while participating in a motorcycle safety

class offered by EPCC. Claiming governmental immunity from suit and from liability, EPCC

filed a plea to the jurisdiction and a motion to dismiss Duran's claims against it. Because Duran

was driving the motorcycle at the time of the accident, the issue was—and is—whether her injury

arose from a government employee's negligent operation or use of a motor-driven vehicle as

required under the TTCA. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 101.021 (West 2011). After

holding a hearing on EPPC's plea and motion, the trial court denied them without explanation.

EPCC now brings this interlocutory appeal. *See* TEX.CIV.PRAC.&REM.CODE ANN.

§ 51.014(a)(8)(West 2015).   We reverse and render.

## FACTUAL AND PROCEDURAL BACKGROUND

Wanting to learn to ride a motorcycle the "right" way, Duran enrolled in the 15-hour, two-day basic rider class offered by EPCC and taught by two of its part-time employees, Dean Kinder and John Steven Moore.[1]   The motorcycles used in the course were provided by EPCC, and Duran was assigned a 125cc motorcycle, the smallest-size available.   But the motorcycle was too large for Duran, a fact she and another student brought to Kinder's attention on the first day of the class.   When Duran asked Kinder if a smaller motorcycle was available, he responded in the negative and, after looking at Duran's motorcycle, told her that she "should be okay."   Despite her concerns about the motorcycle's size, Duran rode it that day and felt comfortable doing so.   On the second day of class, Duran noticed that she was unable to use the motorcycle's bottom brake because the brake peg was missing and the metal bolt jutting from the bike was too short for her to hit with her boot.   Duran brought this shortcoming to Moore's attention after he remarked to her that she was not using the bottom brake as required and ordered her to repeat the lesson.   In response, Duran asked Moore if the bottom brake could be lengthened.   He replied that it could not.   Apparently, Duran did well enough to proceed to the next lesson, "Negotiating Curves[.]" It was while performing this lesson that Duran fell from the motorcycle.   But why Duran fell was—and is—unclear.   Kinder and Moore were adamant Duran fell because she applied the front brake while leaning the motorcycle into a curve, causing the front wheel to lock up and the motorcycle to fall over.   Although Duran acknowledged she and her classmates had been instructed not to apply the brakes while leaning into a curve, she insisted she did not apply them

---

[1] Kinder was the motorcycle program coordinator and Moore's supervisor.   Both worked full-time as El Paso police officers.

2

when she fell. Duran, however, never articulated why she believed she fell.

Duran brought a negligence cause of action against EPPC pursuant to the TTCA. Cognizant that the TTCA does not waive immunity unless the motor-driven vehicle in question is operated or used by a governmental employee, Duran alleged that EPCC "operated" or "used" the motorcycle by exercising direct and complete control over it and its movements. EPPC disputed the notion that its "employees exercised complete and direct control over the precise movents [sic] of the motorcylcle [sic] in question." EPCC insisted that, because Duran's pleading and the relevant jurisdictional evidence "merely shows instruction in the ordinary course of teaching the motorcycle riding class," her claim was one of negligent supervision or instruction, for which she could not recover under the TTCA.

## OPERATION OR USE OF MOTOR-DRIVEN VEHICLE

EPCC contends Duran's petition fails to state a claim for which governmental immunity is waived under the TTCA because Kinder and Moore did not "use" or "operate" the motorcycle. We agree.

### Standard of Review

A plea to the jurisdiction based on governmental immunity challenges a trial court's subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a trial court has subject-matter jurisdiction is a question of law subject to *de novo* review on appeal. *Id*. at 226, 228. In determining whether the plaintiff has carried her burden to allege facts sufficient to establish subject-matter jurisdiction, we review the allegations in the pleadings—accepting them as true and construing them in the plaintiff's favor—and any evidence relevant to the inquiry. *Id*. at 226-27. If the evidence raises a fact question on

3

jurisdiction, the plea must be denied. *Miranda*, 133 S.W.3d at 227-28.

### *Applicable Law*

Under the TTCA, a junior college district is not liable for personal injuries proximately caused by a negligent employee unless the injuries arise from the employee's "operation" or "use" of a motor-driven vehicle. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 101.021 (liability for governmental unit limited to motor-driven vehicles and equipment), TEX.CIV.PRAC.&REM.CODE ANN. § 101.051 (liability for junior college districts limited to motor-driven vehicles); *LeLeaux v. Hamshire-Fannett ISD*, 835 S.W.2d 49, 51 (Tex. 1992)(the required use or operation of the motor-driven vehicle or equipment "is that of the employee").[2] "Operation" means "a doing or performing of a practical work[;]" "use" denotes "to put or bring into action or service; to employ for or apply to a given purpose." [Internal quotation marks omitted]. *LeLeaux*, 835 S.W.2d at 51.

### *Discussion*

The record establishes that Kinder and Moore did not use or operate the motorcycle, and thus, governmental immunity was not waived as to EPCC under the TTCA. The use or operation must be that of the governmental employee, not that of a third person. *LeLeaux*, 835 S.W.2d at 51. Here, Duran was driving the motorcycle at the time of her accident. There is no evidence

---

[2] The TTCA provides in relevant part:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
> (B) the employee would be personally liable to the claimant according to Texas law . . . .

TEX.CIV.PRAC.&REM.CODE ANN. § 101.021(1)(A), (B).

that Kinder or Moore was operating or using the motorcycle when Duran fell from it. Neither of them brought the motorcycle into action or service, or performed practical work with it, by driving it for the purpose of transporting Duran or demonstrating a particular maneuver to her.

Duran contends Kinder and Morgan "used" or "operated" the motorcycle by exercising complete control over its operation or use:

> Duran had no discretion over the motorcycle provided, and no discretion over when and how to operate it. The EPCC instructors controlled the manner and method in which Duran and the other students would use or operate the motorcycle, such as whether to address the motorcycle, turn on and operate the motorcycle, and accelerate, decelerate, brake, stop, park, or turn the motorcycle.

In support of her contention, Duran cites two decisions in which Texas intermediate appellate courts concluded the TTCA applied even though a government employee was not operating the vehicle that caused the plaintiff's injuries. *See County of Galveston v. Morgan*, 882 S.W.2d 485 (Tex.App.--Houston [14th Dist.] 1994, writ denied) and *City of El Campo v. Rubio*, 980 S.W.2d 943 (Tex.App.--Corpus Christi 1998, pet. dism'd w.o.j.). Duran's reliance on these cases is misplaced.[3]

In *Morgan*, the plaintiff fell from a truck after being shocked. 882 S.W.2d at 490-91. Although a county employee did not drive the truck, a county employee was responsible for signaling the truck driver when to move the truck forward, how far to move it, when to raise the

---

[3] We note that EPCC did not argue in the trial court that *Morgan* and *Rubio* were not good law. Instead, EPCC argued these cases were distinguishable because there was no evidence a government employee exercised complete and direct control over the motorcycle's movements. On appeal, however, EPCC raises the argument that the reasoning of *Morgan* and *Rubio* is faulty and conflicts with *LeLeaux*'s pronouncement that the TTCA does not apply to situations in which a government employee was not operating the vehicle responsible for the plaintiff's injuries. We recognize that some Texas intermediate appellate courts have refused to adopt the reasoning of *Morgan* and *Rubio*. *See e.g., McLennan County v. Veazey*, 314 S.W.3d 456, 462 (Tex.App.--Waco 2010, pet. denied); *Elgin Indep. Sch. Dist. v. R.N.*, 191 S.W.3d 263, 268 (Tex.App.--Austin 2006, no pet.); *Tarkington Indep. Sch. Dist. v. Aiken*, 67 S.W.3d 319, 326 (Tex.App.--Beaumont 2002, no pet.). But we have previously concluded that *Morgan* and *Rubio* do not conflict with *LeLeaux*. *See Sepulveda v. County of El Paso*, 170 S.W.3d 605, 614 (Tex.App.--El Paso 2005, pet. denied).

truck's bed, when to lower it, and when to stop the truck. *Morgan*, 882 S.W.2d at 490. In accordance with the employee's signal, the driver moved the truck too close to a power line. *Id*. at 490-91. When the plaintiff climbed into the bed of the truck to determine how close it was to the power line, he received an electric shock. *Id*. The court, emphasizing that the county employee had sole discretion over the truck's operations and that the driver could be fired for disobeying the employee's directions, concluded the employee "used" or "operated" the truck by controlling the truck's movement. *Id*. at 490.

In *Rubio*, the plaintiff was injured when her van was struck by another vehicle. 980 S.W.2d at 944. Although none of the drivers were governmental employees, a police officer had ordered the unlicensed plaintiff, after showing her how to work the van's gas and brake pedals, to drive it and follow him back to the station. *Id*. In accordance with the officer's order, the plaintiff pulled onto the highway to follow him; she was hit immediately thereafter. *Id*. The court, emphasizing that the plaintiff had little or no choice and no control over the situation because she was acting under the officer's direct orders and was fearful for her family's safety on the highway late at night, concluded that the police officer "used" or "operated" the van by controlling its movements. *Id*. at 946-47.

As is evident from the discussion above, *Morgan* and *Rubio* stand for the proposition that a government employee who does not drive a motor-driven vehicle responsible for a plaintiff's injuries is considered to have used or operated the vehicle if he exercises *direct* and *mandatory* control over the driver's actions. Duran argues Kinder and Moore are akin to the government employees in *Morgan* and *Rubio* because they were necessary to the performance of the objective and controlled her movements on the motorcycle through the exercise of their discretion. This

6

argument is superficially appealing. There is no dispute that Kinder's and Moore's instructional leadership was required and that, in a sense, they directed Duran's operations of the motorcycle in teaching her to drive it. But Duran's argument fails to account for an important but critical distinction between this case and *Rubio* and *Morgan*. In those cases, the drivers operated the vehicles at the behest of government employees in positions of formal authority because they had no choice in the matter. They felt compelled to obey the employees' orders for fear of losing something significant: in *Morgan*, loss of employment; in *Rubio*, loss of personal safety.

The same cannot be said here. The undisputed evidence does not support the conclusion that Kinder and Morgan exercised *direct* and *mandatory* control over Duran's actions to such an extent that she had no choice but to act at their behest and drive the motorcycle. Duran never alleged she was compelled to obey Kinder and Moore for fear of losing something significant. Nor does Duran point to any portion of the jurisdictional evidence, including her deposition testimony, establishing she was forced to operate the motorcycle under orders given by government employees in positions of official authority. Not only did Duran voluntarily choose to drive it but she also continued to do so, even after expressing qualms about its size and inadequate rear brake. And the penalty Duran would have incurred for not driving the motorcycle would have been insignificant: dismissal from the class. In sum, there is no evidence that Duran, unlike the drivers in *Morgan* and *Rubio*, was compelled to use or operate a motor-driven vehicle at the behest of a government employee in a position of formal authority.

EPCC's issue is sustained.

### OPPORTUNITY TO REPLEAD

Duran asserts that, "in the unlikely event this Court concludes that [her] pleaded

allegations and jurisdictional facts do not establish the trial court's jurisdiction due to a pleading deficiency or other curable jurisdictional defect," we should provide her the opportunity to amend her pleadings rather than dismiss her cause of action against EPCC. But dismissal is appropriate here because the pleadings and evidence already considered by the trial court–and us—affirmatively negate the existence of jurisdiction. *See Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004); *Sepulveda*, 170 S.W.3d at 616-17. Since the defects in Duran's pleading and evidence are incurable, granting her permission to amend would be futile. Indeed, Duran already amended her pleadings and submitted jurisdictional evidence in response to EPCC's plea to the jurisdiction. Duran has alleged her best case as to her claims, and she should not be permitted to re-litigate jurisdiction once that issue has been finally determined.

## CONCLUSION

Having sustained EPCC's issue on appeal, we reverse the trial court's order denying EPCC's plea to the jurisdiction and render judgment dismissing Duran's claims against EPCC for lack of subject-matter jurisdiction.

July 22, 2015

YVONNE T. RODRIGUEZ, Justice

Before Rodriguez, J., Hughes, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)

8