

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE UNIVERSITY OF TEXAS SYSTEM OPERATING AS THE UNIVERSITY OF TEXAS AT EL PASO, | § § § | No. 08-15-00004-CV |
| Appellant, | § | Appeal from the |
| v. | § | 210th District Court |
| KENNETH PALOMINO, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2013DCV3710) |

**O P I N I O N**

Kenneth Palomino was working on a class project in the university machine shop, using one side of a double-ended pedestal grinder to polish a piece of metal, when his hand was caught in the grinder and crushed. Palomino sued the university under the Texas Tort Claims Act, alleging in part that the university was liable for negligently providing him with a grinder that "was devoid of any protector guard[.]" We must determine whether this case falls within the Tort Claims Act's "use" exception to governmental immunity under the integral safety component doctrine. We conclude that it does not and that the university's immunity was not waived by the Texas Tort Claims Act. Accordingly, we reverse the trial court's order to the extent it denied the university's plea to the jurisdiction and dismiss Palomino's claims.

# BACKGROUND

Kenneth Palomino was an engineering student at the University of Texas at El Paso (UTEP). Palomino injured his hand while using a double-ended pedestal grinder in the UTEP engineering machine shop. A double-ended pedestal grinder is often used to remove excess welding material from a metal piece in order to clean up or "dress" the welds. A double-ended pedestal grinder has two grinding wheels, one on either side of a central motor. Typically, a double-ended pedestal grinder is set up to grind smaller pieces of metal with the wheel on the left side, and larger pieces with the wheel on the right.

Palomino was working on a class project, when he decided to use the pedestal grinder to remove excess welding material from one-inch square steel tubing he had just welded. The metal piece was still hot and difficult to hold, so Palomino used thick welding gloves to hold the piece while grinding it. Palomino chose to use the wheel on the right side of the pedestal grinder set for grinding larger pieces. Palomino had not received instruction in the use of the pedestal grinder, nor had he asked his instructor to demonstrate its use. Palomino alleges that the piece of metal he was grinding was "sucked in" by the grinding wheel, pulling in his hand and crushing it in the process.

Palomino sued UTEP,[1] alleging in part that UTEP was negligent in failing to provide a protector guard on the pedestal grinder.[2] Palomino alleged in particular that UTEP had

---

[1] In his original petition, Palomino named the defendant as "The University of Texas System, Operating as the University of Texas at El Paso." In its answer, UTEP noted that it had been misidentified as "The University of Texas System Operating as The University of Texas at El Paso." The trial court also noted this discrepancy in its order on UTEP's plea to the jurisdiction. While UTEP is an institution of higher education within The University of Texas System and is under the management and control of the board of regents of The University of Texas System, it is a separate legal entity for purposes of suit. *See* TEX. EDUC. CODE ANN. §§ 65.02 (West Supp. 2016), 69.02 (West 2002). In any event, both UTEP and The University of Texas System are immune from suit unless the Tort Claims Act has waived that immunity. *Univ. of Texas at El Paso v. Moreno*, 172 S.W.3d 281, 284 (Tex.App. – El Paso 2005, no pet.).

negligently provided him "with an unguarded and unsafe double-ended pedestal grinder." Palomino identified two components that he asserted were integral to the safe use of the pedestal grinder—a "protector guard" and a "safety rest," which could be used to stabilize the metal piece being ground.

The evidence is undisputed that both a protector guard and a safety rest had been installed on the pedestal grinder in question. Those safety components, however, were installed only on the left side of the pedestal grinder with the wheel for grinding smaller pieces. The right side of the pedestal grinder with the wheel for grinding larger pieces, which Palomino chose to use, did not contain any similar protective components. UTEP presented evidence that this was the typical set up for double-ended pedestal grinders in machine shops across the country, and its experts testified the grinder was not missing any integral safety components and was safe to operate.

UTEP filed a plea to the jurisdiction based on governmental immunity and submitted jurisdictional evidence, asserting in part that Palomino's claim did not fall within the integral safety component doctrine because that doctrine is limited to cases in which a safety component is completely lacking as opposed to being merely inadequate. UTEP also asserted that Palomino's other claims (alleging a failure to adequately maintain and manage the pedestal grinder and to properly instruct and supervise students in its use) did not fall within in any waiver of immunity under the Texas Tort Claims Act. After hearing, the trial court granted UTEP's plea to the jurisdiction in part and dismissed all of Palomino's claims except with respect to Palomino's

---

[2] Palomino also alleged UTEP was negligent in failing to adequately maintain and manage the pedestal grinder, and in failing to properly instruct and supervise students in the use of the pedestal grinder.

"allegation that the double-sided pedestal grinder in question lacked an integral safety component."

## DISCUSSION

UTEP contends the trial court erred in refusing to dismiss Palomino's remaining integral-safety-component claim because he failed to present any evidence that the double-ended pedestal grinder lacked an integral safety component. In particular, UTEP points out that to establish a waiver of sovereign immunity with respect to tangible personal property not actually used by a governmental employee, a plaintiff must demonstrate that an integral safety component was entirely missing from the property provided to him, and not merely inadequate. UTEP argues that because the uncontroverted evidence shows that the pedestal grinder was not entirely lacking an integral safety component, we must reverse and dismiss Palomino's remaining claim.[3] We agree.

### Tort Claims Act and Standard of Review

UTEP is a governmental entity, and the doctrine of governmental immunity shields it from liability for the negligence of its employees absent a waiver of that immunity. *See Texas A&M Univ. v. Bishop*, 156 S.W.3d 580, 583 (Tex. 2005); *Esparza v. Univ. of Texas at El Paso*, 471 S.W.3d 903, 908 (Tex.App. – El Paso 2015, no pet.) ("As a governmental entity, UTEP is generally immune from suit."). As a governmental unit, UTEP is immune from both suit and liability for negligence unless the Texas Tort Claims Act has waived that immunity. *Univ. of Texas at El Paso v. Moreno*, 172 S.W.3d 281, 284 (Tex.App. – El Paso 2005, no pet.); *see Sampson v. Univ. of Texas at Austin*, No. 14-0745, 2016 WL 3212996, at *2 (Tex. June 10, 2016)

---

[3] UTEP also contends Palomino failed to show that his injuries were proximately caused by the lack of an integral safety component. We do not reach this contention since its resolution is unnecessary to the final disposition of the appeal. *See* TEX. R. APP. P. 47.1.

("a governmental unit is immune from suit unless the Tort Claims Act expressly waives immunity").

Immunity from suit implicates a court's subject matter jurisdiction. *Sampson*, 2016 WL 3212996, at \*2; *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012). "Whether a court has subject matter jurisdiction is a question of law, properly asserted in a plea to the jurisdiction." *Sampson*, 2016 WL 3212996, at \*2; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Where, as here, evidence is presented with a plea to the jurisdiction, the court reviews the relevant evidence and may rule on the plea as a matter of law if the evidence does not raise a fact issue on the jurisdictional question, a standard that generally mirrors the summary judgment standard. *Harris Cty. Flood Control Dist. v. Kerr*, No. 13-0303, 2016 WL 3418246, at \*4 (Tex. June 17, 2016).

**The Integral Safety Component Doctrine**

The Tort Claims Act expressly waives immunity from suit in three areas: (1) use of publicly owned automobiles; (2) injuries arising out of a condition or use of tangible personal property; and (3) premises defects. *Sampson*, 2016 WL 3212996, at \*2; *Miranda*, 133 S.W.3d at 225. In particular, the Tort Claims Act waives a governmental unit's immunity from suit when personal injury or death is caused by a "use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2011).

As noted by the Texas Supreme Court, this provision has led to vigorous debate over the proper scope of the waiver and has "spawned a host of cases exploring the outer bounds of this 'use' exception to governmental immunity." *City of N. Richland Hills v. Friend*, 370 S.W.3d 369,

5

372 (Tex. 2012); *see also Sampson*, 2016 WL 3212996, at *4 ("For four decades, Texas jurists have repeatedly expressed concerns about the difficulty of discerning the Legislature's intended meaning behind the words 'condition or use' as they appear in the . . . Tort Claims Act.") (quoting *Abutahoun v. Dow Chem. Co.,* 463 S.W.3d 42, 49 (Tex. 2015)). But, certain rules have emerged from the myriad of cases exploring the "use" exception to immunity.

For example, to state a claim for a "use" of tangible personal property under the Tort Claims Act, the injury, as in the present case, must be contemporaneous with the use of the tangible personal property—"[u]sing that property must have actually caused the injury." *Sampson*, 2016 WL 3212996, at *4 (quoting *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001)). Further, allegations of mere non-use of property cannot support a "use" claim under the Tort Claims Act. *Id.* (citing *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869-70 (Tex. 2001)); *see also Friend*, 370 S.W.3d at 372 ("It is well settled that mere nonuse of property does not suffice to invoke section 101.021(2)'s waiver."). Moreover, a governmental unit "does not 'use' tangible personal property . . . within the meaning of section 101.021(2) by merely providing, furnishing, or allowing . . . access to it." *Sampson*, 2016 WL 3212996, at *4 (quoting *Rusk State Hosp.*, 392 S.W.3d at 98).

Important to this case, however, the Supreme Court has explained that non-use and furnishing access to tangible personal property are distinguishable from situations in which a governmental unit "provided equipment that lacked an integral safety component." *Id.* In some cases, the Supreme Court has held that when a plaintiff alleges that the state has provided him property that lacks an integral safety component, immunity is waived under Section 101.021(2). *See Friend*, 370 S.W.3d at 372.

6

This integral safety component doctrine had its genesis in *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297 (Tex. 1976), in which the plaintiff complained that Texas Tech University failed to give him a knee brace with his football uniform. *Id*. at 298. The Supreme Court concluded that because a knee brace was, in light of Lowe's previous knee injury, an integral part of his football uniform, the failure to furnish it constituted a use of property sufficient to invoke the waiver of immunity in Section 101.021(2). *Id.* at 300. Subsequently in *Robinson v. Cent. Tex. MHMR Ctr.,* 780 S.W.2d 169 (Tex. 1989), the Supreme Court held that the provision of swimming gear to an epileptic patient without a life preserver also established waiver. *Id*. at 171. But, as the Supreme Court has later explained, "our recent holdings have limited the precedential value of those two cases." *Friend*, 370 S.W.3d at 372.

For example, in *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582 (Tex. 1996), the Supreme Court stated that *Lowe* and *Robinson* represented "the outer bounds of what we have defined as use of tangible personal property." *Id.* at 585. "The precedential value of these cases is therefore limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries." *Id.* Later, in *Texas A&M Univ. v. Bishop,* 156 S.W.3d 580 (Tex. 2005), the Supreme Court further explained that in deciding *Lowe* and *Robinson*, "we did not intend to allow both use and non-use (*i.e.*, failure to provide a *more effective* safety feature) to effect a waiver of immunity under the Act." *Id*. at 584. Rather, providing equipment that lacks "an integral safety component" represents "the outer bounds of what we have defined as use of tangible personal property," and the Court will apply its precedent "narrowly only when an integral safety component is entirely lacking rather than merely inadequate." *Id*.

7

**Analysis**

UTEP relies heavily on the Supreme Court's decision in *Bishop* to support its contention that Palomino's remaining claim does not fall within the integral safety component doctrine because the double-ended pedestal grinder was not completely lacking in a safety component, but at most was merely inadequate in having its safety components on only one side.

In *Bishop*, the plaintiff, while acting in a university drama club production, was inadvertently stabbed in the chest when a fellow actor missed the stab pad the plaintiff wore that was intended to deflect the blow. 156 S.W.3d at 581. The director of the play, who was an independent contractor, had decided to use a real knife for dramatic effect in the final climatic scene. *Id*. at 581, 582. The Supreme Court held that the faculty advisors' alleged failure to properly supervise the props that the director chose did not constitute a use of tangible personal property under the Tort Claims Act. *Id*. at 581. The Court noted that it had recently concluded that a "governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more." *Id*. at 583 (quoting *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004)). The Court concluded that to the extent the plaintiff was claiming the faculty advisors allowed the director to provide the knife by failing to properly supervise the production, such negligent supervision, without more, did not constitute a "use" of personal property under the Tort Claims Act that would waive the university's immunity. *Id*.

The plaintiff also claimed, however, that his case was analogous to *Robinson* and *Lowe* in which immunity was waived when a state actor provided equipment that lacked an integral safety component. *Id*. at 584. The Supreme Court disagreed, noting that it had previously said those cases represent "the outer bounds of what we have defined as use of tangible personal property,"

8

and that the Court has applied them narrowly only when the integral safety component is entirely lacking rather than merely inadequate. *Id*. (quoting and citing *Clark*, 923 S.W.2d at 585).

The Supreme Court noted that in *Clark* it had held that prescribing a medication less effective that an alternative treatment does not mean that the medicine provided lacked an integral safety component. *Id*. The Court explained it had already determined in *Clark* that claims of failing to provide a *more effective* safety feature would not effect a waiver of immunity under the Tort Claims Act.[4] *Id*. The Supreme Court held that similarly, the plaintiff's claim in *Bishop* that the knife was inherently unsafe without an adequate stab pad did not mean that an integral safety component was lacking for purposes of a waiver of immunity under the Tort Claims Act. *Id*.

Similarly, in the present case, Palomino's claim that the pedestal grinder was unsafe because it lacked safety components on the right side does not mean that an integral safety component was entirely lacking for purposes of a waiver of immunity under the Tort Claims Act. The evidence is undisputed that the double-sided pedestal grinder did in fact have two integral safety components installed—a protector guard and a safety rest, albeit they had been installed only on the left side of the pedestal grinder. The pedestal grinder was therefore not "entirely lacking" an integral safety component. Palomino's contention that a protector guard or a safety rest should have also been installed on the right side of the pedestal grinder is a claim that the safety components that were installed were "merely inadequate" to protect him and remits to a claim that UTEP failed to provided him a "more effective safety feature." Accordingly, Palomino

---

[4] The Supreme Court distinguished *Lowe* and *Robinson*, explaining that for those cases to apply, the Court would have to assume the university in *Lowe* would have waived immunity even if it had provided a knee brace if Lowe could have shown another type of knee brace would have better protected him, and that the Court would have to assume that MHMR in *Robinson* would have waived immunity even if it had provided a life preserver if Robinson could have shown that MHMR should have provided him with a better one. 156 S.W.3d at 584 (quoting *Clark*, 923 S.W.2d at 585).

has failed to show that his claim falls within the Tort Claims Act's "use" exception to governmental immunity under the integral safety component doctrine.

Palomino contends this case is controlled by *Tex. State Tech. College v. Beavers*, 218 S.W.3d 258 (Tex.App. – Texarkana 2007, no pet.). In *Beavers*, the college student was enrolled in a diesel engine testing and repair class and was injured when he and a fellow student attempted to flip a diesel engine over by using a hydraulic hoist furnished by Texas State Technical College (TSTC). *Id.* at 260. Beaver's hand was seriously injured when it was caught between the hoist leg and the engine. *Id.* Despite not finding any evidence that an integral safety component was completely lacking, the Texarkana Court of Appeals held that TSTC had "used" tangible personal property in such a manner as to waive immunity under the Tort Claims Act. *Id.* at 265, 267. We believe there are several differences that distinguish *Beavers* from the present case.

First, the court in *Beavers* noted that TSTC's sole argument on appeal was that immunity was waived only if a state employee was physically operating the personal property at the time of the injury. *Id.* at 266. Here, UTEP recognized the narrow exception to that rule and clearly placed into issue Palomino's failure to bring his case within the integral safety component doctrine. Second, in *Beavers* there was evidence presented from three experts that the hydraulic hoist furnished by TSTC was defective, while in the present case, the only expert evidence presented showed that the double-sided pedestal grinder was not missing any integral safety components but was set up in the accepted fashion with protective devices on one side only.

Most important, in *Beavers* the court held that TSTC had not "merely" furnished the hydraulic hoist in large part because the student had been instructed and directed in its use. *Id.* at 265 (posing the issue to be decided as: "Does the governmental unit 'use' the tangible personal

10

property when it negligently places equipment . . . into service, instructs the student in its use, and directs the student to use the property?").  In the present case, the instructor testified that he did not have time to instruct the class in the use of the double-sided pedestal grinder.  Further, Palomino testified the instructor was not around when he wanted to use the grinder, and that instead, a teaching assistant told him he could "go ahead" when he asked if he could use the grinder to dress the weld on the metal piece he had just welded.[5]  Thus, unlike the plaintiff in *Beavers*, Palomino was neither instructed nor, more importantly, directed in his use of the double-sided pedestal grinder.

We know of no decision other than *Beavers* in which a court has concluded that furnishing personal property is somehow transformed into a "use" of property when the governmental unit has instructed the plaintiff in the use of that property.  The Texas Supreme Court has never found a waiver under those circumstances, and it appears unlikely the Court would do so given its consistent limitations on the integral safety component doctrine and repeated warnings that the doctrine is to be narrowly applied "only when an integral safety component is entirely lacking rather than merely inadequate."  *Bishop,* 156 S.W.3d at 584.

In this respect, we have determined, in the college-instruction context, that only an instructor's direct and mandatory control over the student's actions could possibly result in a waiver of immunity.  *El Paso Cmty. College Dist. v. Duran*, 2015 WL 4480867, at *4 (Tex.App. – El Paso July 22, 2015, pet. filed).  In *Duran*, the college had provided the plaintiff with a motorcycle to use in a motorcycle safety class offered by the district.  *Id*., at *1.  Duran fell and suffered a broken shoulder while driving the motorcycle during the second day of instruction.  *Id*.

---

[5]  We note that Palomino did not make any negligence allegations in his petition concerning the teaching assistant, but rather based his claims solely on the negligence of his instructor.

11

Duran sued the college alleging it had waived its immunity through the "operation or use" of a motor-driven vehicle. *Id.* We concluded that because Duran was driving the motorcycle at the time of her injury, immunity was not waived since the "operation or use" of the motor vehicle must be that of a governmental employee, and not a third person. *Id.*, at *2.

Duran argued, however, that her instructors had effectively "operated or used" the motorcycle through their class instruction by controlling the manner and method by which she and the other students would use or operate the motorcycle. *Id.*, at *2. Duran relied on two cases in which the courts had determined that immunity was waived by the Tort Claims Act even though a government employee was not operating the vehicle that caused the plaintiff's injuries. *See County of Galveston v. Morgan*, 882 S.W.2d 485, 490-91 (Tex.App. – Houston [14th Dist.] 1994, writ denied) (county employee "operated and used" truck because the employee was responsible for signaling the driver and controlling his operation of the truck that resulted in plaintiff's injuries); *City of El Campo v. Rubio,* 980 S.W.2d 943, 946-47 (Tex.App. – Corpus Christi 1998, pet. dism'd w.o.j.) (police officer "operated or used" vehicle when he ordered plaintiff, an unlicensed driver, to drive vehicle and follow him back to the police station resulting in plaintiff's injuries). We concluded that Duran's reliance on these two cases was misplaced because the government employees in both cases were considered to have used or operated the vehicle only because they exercised direct and mandatory control over the driver's actions. *Id.*, at *4. While the instructors in Duran's class directed her operations of the motorcycle in the sense they were teaching her how to drive it, Duran was not being compelled to obey their instructions. *Id.*, at *4. Duran did not plead or present any jurisdictional evidence that she had no choice by to follow their directions, and the only penalty Duran would have incurred for non-compliance was dismissal

12

from the class. *Id.*, at *4. We concluded therefore that Duran failed to establish a waiver of immunity under the Tort Claims Act because she had failed to show that her instructors had exercised direct and mandatory control over her actions. *Id.*, at *4.

Similarly, Palomino has not shown that any UTEP employee exercised direct and mandatory control over his use of the pedestal grinder or that he had no choice but to follow any such directions. At most, Palomino has only raised a fact issue that a teaching assistant told him he could "go ahead" and use the grinder. Accordingly, Palomino has failed to establish a waiver of immunity under the Tort Claims Act. We therefore grant UTEP's issue on appeal.

### CONCLUSION

Because UTEP's immunity was not waived by the Texas Tort Claims Act under the integral safety component doctrine, we reverse the trial court's order to the extent it denied UTEP's plea to the jurisdiction on Palomino's integral safety component claim and dismiss all of Palomino's claims for lack of jurisdiction.


                        STEVEN L. HUGHES, Justice

August 24, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

13