**Affirmed and Memorandum Opinion filed December 11, 2018.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-17-00807-CV

### METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY, TEXAS, Appellant

**v.**

### TERRY SMITH, Appellee

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2016-18317**

# MEMORANDUM OPINION

This is an interlocutory appeal from the trial court's denial of a plea to the jurisdiction filed by the Metropolitan Transit Authority of Harris County (METRO). In a single issue, METRO argues that the trial court erred by denying METRO's plea to the jurisdiction and motion to dismiss "because the court did not have subject matter jurisdiction over a 'negligent use' claim of a .22 caliber hand gun because the gun was not issued, approved or used by METRO nor owned by the METRO officer

who allegedly discharged the weapon." We affirm.

## I. BACKGROUND

Terry Smith, an officer with the Houston Police Department (HPD), spent the afternoon of June 9, 2015, issuing traffic tickets with Gregory Hudson, an officer employed by METRO. The two officers were working as a team. One officer directed vehicles to pull into a nearby Sears' parking lot where the other officer issued citations. Melanie Richard was the last driver stopped that afternoon. While Smith issued a citation to Richard, Hudson waited nearby where the officers had parked their motorcycles.

After Smith finished writing Richard's ticket, he returned to his motorcycle. With his back to Hudson, Smith bent over to place his ticket book into his saddlebag. As he bent over, Smith, Hudson, and Richard all heard a "loud pop." Neither officer knew what caused the noise. Both officers asked each other whether one of their guns or tazers had gone off.

Within a few minutes, Smith became light-headed and had trouble breathing. Hudson called for an ambulance and paramedics discovered that Smith had a gunshot wound to his abdomen. Surgeons later removed a .22 caliber bullet from Smith's abdomen.

HPD opened an investigation into the shooting. Sergeant Robles of HPD's Homicide Division led the investigation and explored several possible scenarios. Initially, Robles investigated the possibility of an up-close or drive-by shooting. However, security footage and witness statements indicated that no vehicles had driven by at the time Smith was shot. Security footage also revealed that the only individuals walking "fairly close" to the officers during the shooting were two homeless men picking up trash. Robles ruled out an up-close or drive-by shooting.

2

Next, Robles investigated a possible sniper attack. Agent Petrowski, a former FBI sniper, assisted Robles in this stage of the investigation. Petrowski scouted the area for potential sniper locations. Petrowski concluded that there were two possible locations from which a sniper could have shot Smith. First, Petrowski identified an apartment building across the street, about half a block away. This position was ruled out because the officers could not have heard the shot from such a far distance. The other possible sniper position was an open spot in the Sears parking lot. This position was ruled out because neither the officers nor any witness saw the shooting. Robles ruled out a sniper attack.

Robles also investigated Richard as a possible suspect. Two days after the shooting, Richard contacted HPD to check on Smith's condition. Her call was transferred to Robles. After speaking to Robles, Richard voluntarily came to the police station to give a formal statement. Robles performed a background check and found Richard was a working professional with no criminal history. In addition, Hudson was facing Richard when Smith was shot, so he likely would have seen her shoot Smith if she had done so. Robles cleared Richard as a suspect.

After ruling out these scenarios, Robles concluded the likely cause of Smith's shooting was an accidental discharge of Hudson's firearm: "it began to appear more than this was an accidental shooting between two officers." Investigators extensively questioned Hudson. Hudson repeatedly denied any involvement in the shooting, even after failing a polygraph test.

Robles's investigation made several conclusions: the shot came from behind Smith, striking him in the back; the shot was fired from only a few feet away; and, based on witness statements and an inconclusive security video, Robles concluded that Hudson was standing in the area the shot came from and was the only person close enough to Smith to have fired the shot. Nonetheless, Robles did not believe

the evidence was sufficient to continue investigating Hudson.

In March 2016, Smith sued METRO for his personal injuries resulting from the shooting. Smith alleged in his amended petition that METRO is liable for Hudson's actions in one or more of the following ways:

(1) In Defendant Metro's employee, Officer Hudson, failing to properly use personal property, as would have been done by a reasonable person exercising ordinary prudence under the same or similar circumstances;

(2) In Defendant Metro's employee, Officer Hudson, negligently handling his firearm, as would not have been done by a reasonable person exercising ordinary prudence under the same or similar circumstances; and

(3) In Defendant Metro's employee, Officer Hudson, negligently discharging his firearm, as would not have been done by a reasonable person exercising ordinary prudence under the same or similar circumstances.

Smith claimed that METRO was liable for Hudson's negligent conduct based on the doctrine of respondeat superior. Smith sought to invoke the trial court's jurisdiction under section 101.021(2) of the Texas Tort Claims Act.

In August 2017, METRO filed a plea to the jurisdiction and motion to dismiss asserting that governmental immunity had not been waived. The trial court denied the plea and motion. METRO timely appealed.

## II.   ANALYSIS

As a threshold issue, we determine we have appellate jurisdiction over this interlocutory appeal. Although appellate courts generally have jurisdiction only on appeals from final judgments, litigants may appeal, and this court may review, a trial court's denial of a plea to the jurisdiction by a governmental unit. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2018). Accordingly, we proceed to the merits of this interlocutory appeal.

4

In support of its issue, METRO argues the trial court erred because (1) METRO did not "use" tangible personal property as required by section 101.021(2) because it did not provide or issue Hudson a .22 caliber firearm and it did not authorize Hudson to carry a .22 caliber firearm; (2) Hudson has official immunity for his actions and, therefore, "so too does METRO;" and (3) "there is no causal relationship between Smith's shooting, METRO, or any .22 [caliber] weapon."

## A. Standard of review

"A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Because governmental immunity from suit defeats a trial court's subject matter jurisdiction, it is "properly asserted in a plea to the jurisdiction." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

A plea to the jurisdiction may be used to challenge the sufficiency of jurisdictional allegations in the pleadings or to controvert jurisdictional facts alleged, or both. *Id.* at 226–27. We review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 226.

When a plea to the jurisdiction challenges the facts pleaded in a petition, the courts must construe the pleadings liberally in favor of the plaintiff. *Id.* at 226. If the pleadings do not contain sufficient facts to affirmatively show the trial court's jurisdiction—that is, if there is a gap in jurisdictional facts or a complete absence of them—the trial court must allow the plaintiff an opportunity to amend its pleadings. *Id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, the trial court may grant the plea to the jurisdiction without allowing the plaintiff an opportunity to amend. *Id.* at 227.

When a plea to the jurisdiction challenges the existence of jurisdictional facts,

courts must consider relevant evidence submitted by the parties. *Id.* If the evidence creates a fact issue regarding jurisdiction, the trial court does not rule but, instead, submits the issue to the fact finder in a trial on the merits. *Id.* at 227–28. Otherwise, the trial court rules on the motion as a matter of law. *Id.* at 228.

The standard of review for a jurisdictional plea based on evidence generally mirrors that of a traditional summary judgment. *Id.* Under this standard, we credit as true all evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Id.* The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *See id.* Proof is conclusive "only if reasonable people could not differ in their conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant discharges this burden, the nonmovant must present evidence sufficient to raise a genuine issue of material fact regarding jurisdiction, or the plea will be sustained. *Miranda*, 133 S.W.3d at 228. As with a traditional motion for summary judgment, if the movant fails to present conclusive proof of facts negating subject-matter jurisdiction, the burden does not shift to the nonmovant to establish the existence of an issue of material fact. *See id.*

## B.    Governmental immunity and waiver

Governmental immunity is a common law doctrine protecting governmental entities from suit, similar to sovereign immunity. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). While sovereign immunity protects the State and its various agencies from suit, governmental immunity protects the State's political subdivisions, such as cities, counties, and school districts, from suit. *Id.* As a governmental unit, METRO is generally protected from suit by

governmental immunity.[1]

The Texas Tort Claims Act (the Act) provides a limited waiver of immunity for certain tort claims against a governmental unit. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.109 (West 2018). Relevant here, section 101.021(2) of the Act waives a governmental unit's immunity from suit for personal injuries "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 2018).

### 1. "Use" of tangible personal property

Regarding Smith's claim for "use" of tangible personal property, METRO challenged the sufficiency of Smith's jurisdictional allegations. METRO asserts that "Smith's pleadings, even if true, do not allege a claim for which METRO's governmental immunity has been waived under" the Texas Tort Claims Act. METRO argues it did not "'use' or issue a .22 caliber weapon to Hudson" and "Section 101.021(2) of the Act waives immunity for claims based on 'use' of tangible personal property **only** when the governmental unit **itself** uses the property."[2] Smith claims Hudson negligently discharged his firearm causing Smith's injuries. METRO contends "that unless the governmental agency itself supplies and places in use the object which causes the harm, there is no waiver of governmental immunity." We disagree.

---

[1] Smith does not dispute METRO's status as a governmental unit. *See also Metro. Transit Auth. of Harris Cty. v. Douglas*, 544 S.W.3d 486, 492 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("As a governmental unit, Metro is immune from suit absent an express waiver of governmental immunity.").

[2] METRO also briefly addresses the "condition" prong of section 101.021(2). However, as METRO states in its brief, "[Smith] does not complain of the condition of the .22 caliber weapon" or assert "that the .22 caliber weapon was defective or lacked some safety feature." Accordingly, we do not address this issue.

The Texas Supreme Court has consistently defined "use" in section 101.021(2) as meaning "to put or bring into action or service; to employ for or apply to a given purpose." *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004). The government brings personal property into action or service or employs personal property through its employees. *See DeWitt v. Harris Cty.*, 904 S.W.2d 650, 653 (Tex. 1995) ("There is no question that subsection 2 provides for governmental liability based on respondeat superior for the misuse by its employees of tangible personal property"); *City of Houston v. Ranjel*, 407 S.W.3d 880, 893 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("For waiver to exist . . . , a governmental employee must be the one . . . using the . . . tangible personal property."); *Tex. State Tech. Coll. v. Beavers*, 218 S.W.3d 258, 267 (Tex. App.—Texarkana 2007, no pet.) ("An inanimate legal entity can only act by its employees."); *Univ. of Tex. Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102, 106 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("Although the term 'paid employee' is not contained within subsection two, the Supreme Court of Texas has interpreted subsection two of section 101.021 to require that a governmental employee use the tangible personal property.") (citing *Cowan*, 128 S.W.3d at 246).

METRO has not cited, and we have not found, any case holding that a governmental entity must issue, provide, or furnish its employee tangible personal property before it can be liable for injuries caused by the employee's use of tangible personal property. The case law indicates the opposite. Texas courts have rejected arguments that immunity was not waived under section 101.021 because the State or its subdivision did not own or furnish the tangible personal property that caused the injury. *See Sipes v. City of Grapevine*, 146 S.W.3d 273, 281 (Tex. App.—Fort Worth 2004), *rev'd in part on other grounds*, 195 S.W.3d 689 (Tex. 2006) ("There is no requirement under the [Tort Claims] Act that the City own the tangible property

8

that causes the injury."); *Sem v. State*, 821 S.W.2d 411, 415–16 (Tex. App.—Fort Worth 1991, no pet.) ("Nothing in [section 101.021] requires that the State own the tangible property in question, and we have found no case holding that the State must own the property in order to be subjected to liability under the act."); *Jenkins v. State*, 570 S.W.2d 175, 178 (Tex. App.—Houston [14th Dist.] 1978, no writ) (rejecting argument that defendants were not liable because tangible personal property was not prepared, furnished, controlled, or owned by them).[3]

Likewise, the Texas Supreme Court has repeatedly held that furnishing, providing, or allowing access to personal property does not constitute a "use" of tangible personal property. *See Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 389 (Tex. 2016) ("[W]e have explained that a governmental unit 'does not 'use' tangible personal property . . . within the meaning of section 101.021(2) by merely providing, furnishing, or allowing . . . access to it.'") (quoting *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 98 (Tex. 2012)); *Black*, 392 S.W.3d at 98 ("Neither providing nor prohibiting access to the bag was a 'use.'  The Blacks' 'use' argument erroneously equates providing, furnishing, or allowing access to tangible property with putting or bringing the property into action or service or applying the property to a given purpose."); *Cowan*, 128 S.W.3d at 246 ("By providing Cowan his walker and suspenders, the Hospital did not 'use' them within the meaning of section 101.021(2)."); *see also Univ. of Tex. M.D. Anderson Cancer Ctr. v. Baker*, 401 S.W.3d 246, 253 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (concluding that "merely 'providing, furnishing, or allowing access to tangible property'

---

[3] *UTMB v. York*, 871 S.W.2d 175, 179 n.7 (Tex. 1994), disapproved of the *Jenkins* case and others dealing with "information" as tangible property, only to the extent that medical records were at issue in that case.  The UTMB court did not discuss or disapprove the *Jenkins* court's holding that use or misuse at the direction of State employees, regardless of ownership of the property, is actionable.

generally does not constitute a 'use' under the TTCA") (quoting *Black*, 392 S.W.3d at 98).

METRO attempts to support its position primarily by relying on three cases: *Cowan*, 128 S.W.3d 244; *Texas A&M University v. Bishop*, 156 S.W.3d 580 (Tex. 2005); and *Beavers*, 218 S.W.3d 258. METRO claims "The common thread in these cases is that unless the governmental agency itself supplies and places in use the object which causes the harm, there is no waiver of governmental immunity." But none of these cases held that unless the governmental agency itself supplies and places in use the object which causes the harm, there is no waiver of governmental immunity. None of these cases supports METRO's argument.

In *Cowan* and *Bishop*, the Texas Supreme Court held there was no "use" because third parties—not government employees—used the injury-causing personal property. In *Cowan*, a psychiatric patient (Cowan) was admitted to San Antonio State Hospital after exhibiting psychotic behavior, acute depression, and suicidal tendencies. 128 S.W.3d at 245. The Hospital confiscated Cowan's personal effects upon admission but allowed Cowan to keep his walker and suspenders with him. *Id.* Cowan used the suspenders and a piece of metal from his walker to commit suicide. *Id.* Cowan's wife and children sued the Hospital, claiming that it "used" Cowan's walker and suspenders within the meaning of the Act's waiver by allowing him to retain possession of them. *Id.* The Texas Supreme Court disagreed and explained that "the Hospital's immunity c[ould] be waived only for its own use of Cowan's walker and suspenders, and not by Cowan's use of them." *Id.* at 246. The Court reasoned that a governmental unit does not "use" property merely by allowing a third party to use it. *Id.* The Court held the Hospital's immunity was not waived because plaintiffs did not allege that Cowan's death was caused by the Hospital's use of the property. *Id.* at 247.

10

In *Bishop*, a student drama club hired two independent contractors to direct the club's rendition of *Dracula*. 156 S.W.3d at 582, 585. The club also had two faculty advisors who provided logistical support and acted as liaisons to the university. *Id.* at 581–82. The independent-contractor directors were responsible for choosing any props to be used in the play. *Id.* at 582. For one scene involving a stabbing, they chose a real Bowie knife. *Id.* One of the directors also fashioned a "stab pad" that the student playing Dracula wore underneath his costume to deflect the blow from the Bowie knife. *Id.* at 581–82. During the second performance, the Bowie knife missed the stab pad and penetrated the student's chest, puncturing his lung. *Id.* at 582. The Texas Supreme Court held "that the faculty advisors' alleged failure to properly supervise the props that the director chose d[id] not constitute a use of tangible personal property within the Tort Claims Act's meaning, and that the play's director was an independent contractor for whose acts or omissions the university is not liable." *Id.* at 581. The Court explained that no evidence in the record supported that the directors were employees, and as such, their actions could not constitute a "use" of personal property under the Act. *Id.* at 585.

*Beavers* involved a high school student who enrolled in a college-level technical course—diesel engine testing and repair—offered by Texas State Technical College (TSTC). 218 S.W.3d at 260. The instructor showed the students, including Beavers, how to turn over a diesel engine using a hydraulic hoist. *Id.* at 261. While Beavers and another student attempted to turn an engine, the engine fell and crushed Beavers' hand. *Id.* at 260–61. On appeal of the denial of its plea to the jurisdiction, TSTC argued that governmental immunity was not waived with respect to Beavers' injury because no TSTC employee was using the hoist when Beavers was injured. *Id.* at 261. The Texarkana court of appeals rejected this argument,[4]

---

[4] Explaining its conclusion, the *Beavers* court distinguished *Cowan* and *Bishop*. *See id.* at

11

holding,

> when a governmental unit does more than merely allow [a third party] access to personal property, but also negligently equips the property, intentionally puts it into service for use by [a third party] with full knowledge of its intended use, and instructs the manner of its use, . . . the governmental unit has used tangible personal property in such a manner as to waive immunity under the Tort Claims Act."

*Id.* at 267.[5]   None of these cases supports the proposition that unless the governmental agency provides or issues the object that its employee uses to cause harm, there is no waiver of governmental immunity.[6]

METRO also contends that not requiring METRO to have provided or furnished the property would result in an absolute waiver of immunity under section 101.021(2).  METRO attempts to illuminate this argument with a hypothetical:

> For example, under [Smith's] theory, if a METRO police officer caused injury by hand-cuffing an apprehended offender in twine or barbed wire instead of company issued handcuffs, METRO would waive its

---

263–67.

[5] It is important to note that this reasoning by the *Beavers* court has recently been called into question by one of our sister courts. *See Univ. of Tex. Sys. v. Palomino*, 498 S.W.3d 711, 718 (Tex. App.—El Paso 2016, pet. denied) ("We know of no decision other than *Beavers* in which a court has concluded that furnishing personal property is somehow transformed into a 'use' of property when the governmental unit has instructed the plaintiff in the use of that property.  The Texas Supreme Court has never found a waiver under those circumstances, and it appears unlikely the Court would do so given its consistent limitations on the integral safety component doctrine and repeated warnings that the doctrine is to be narrowly applied 'only when an integral safety component is entirely lacking rather than merely inadequate.'" (quoting *Bishop*, 156 S.W.3d at 584)).  Our opinion should not be construed as approving of the reasoning or holding in *Beavers*. We address the case because METRO relies upon it.

[6] Further, we find it instructive that cases interpreting section 101.021(1) have held that waiver may exist from injuries caused by the use of a non-government owned motor vehicle.  *See Cty. of Galveston v. Morgan*, 882 S.W.2d 485, 490 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("There is no requirement that the vehicle in question be a county vehicle, only that a county employee 'used' or 'operated' the vehicle.") (citing *LeLeaux v. Hamshire–Fannett Indep. School Dist.*, 835 S.W.2d 49, 51 (Tex. 1992)); *Sem*, 821 S.W.2d at 413, 415–16.

immunity despite using equipment (i.e. twine or barbed wire handcuffs) which METRO did not "put or bring into action or service" or "employ for or apply to a given purpose."

METRO cites no cases to support this argument, and we do not find it persuasive. Among other flaws with its position, the actions METRO describes might constitute an intentional tort for which the Act does not waive immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (West 2018) ("This chapter does not apply to a claim: . . . (2) arising out of assault, battery, false imprisonment, or any other intentional tort."); *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014) (police officer's use of overly tight handcuffs to effectuate arrest constituted civil battery claim rather than negligence; governmental immunity not waived).

We are likewise unpersuaded by METRO's assertion that its "use" argument is consistent with the Act's election of remedies section. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (West 2018). In the three sentences devoted to this argument, METRO apparently contends that because a plaintiff must sue either the agency or the employee, the plaintiff must elect to sue the employee "if the employee has used tangible property not put into service by the agency." The statute itself does not support this argument. METRO cites no cases supporting its argument, and we have found none.

METRO concedes that "had METRO 'put or [brought] [the .22 weapon] into action or service,' assuming all other facts equal, a waiver would exist." Under the doctrine of respondeat superior, METRO bears responsibility for Hudson's actions in the course and scope of his employment. *See Dewitt*, 904 S.W.2d at 653. Therefore, if Hudson brought the .22 caliber firearm into service in the course and scope of his employment, as Smith alleged, then METRO likewise brought the .22 caliber firearm into service. *See id*. Indeed, METRO concedes that "Hudson [was] in the course and scope of [his] employment and acting in [his] official capacity as

13

[a] peace officer[] at the time of the alleged incident." Smith has sufficiently alleged a "use" of tangible personal property for which governmental immunity is waived. We reject METRO's argument that "that unless the governmental agency itself supplies and places in use the object which causes the harm, there is no waiver of governmental immunity."

## 2. Causation

Regarding Smith's allegations that Hudson shot Smith, METRO challenges the existence of jurisdictional facts. METRO does not dispute that the shooting caused Smith's injuries. METRO argues there is no waiver because "there is no causal relationship between Smith's shooting, METRO, or any .22 [caliber] weapon." To fall within the waiver of section 101.021(2), the plaintiff's injury "must be proximately caused by the condition or use of tangible property." *Dall. Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). The Texas Supreme Court requires a causal nexus between the use of the property and the plaintiff's injury. *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003); *see Bossley*, 968 S.W.2d at 342–43 (incidental involvement of property is insufficient to establish waiver, and property does not "cause" injury if it simply furnishes condition that makes injury possible).

METRO argues that Hudson did not shoot Smith. METRO contends that "[j]ust because Hudson . . . was in close proximity to Smith at the time of the shooting does not establish a causal connection." METRO argues it cannot be held liable because Smith cannot identify Hudson as the shooter, Hudson denies shooting Smith, no other witnesses saw Hudson shoot Smith, and no .22 caliber weapon or shell casing was found at the scene.

METRO essentially contends there is a complete lack of jurisdictional evidence regarding causation. *See Thornton v. Ne. Harris Cty. MUD 1*, 447 S.W.3d

14

23, 35–36, 36 n.10–11 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Thus, this is "a case in which the jurisdictional challenge implicates the merits of the plaintiff['s] cause of action." *Miranda*, 133 S.W.3d at 227. As the movant on a plea to the jurisdiction, METRO had the initial burden to prove that no genuine issue of material fact existed regarding causation and therefore it was entitled to judgment as a matter of law. *See Thornton*, 447 S.W.3d at 38. If METRO carried its burden, the burden shifted to Smith to show a genuine dispute of material fact as to the challenged jurisdictional issue, which here is causation. *See Miranda*, 133 S.W.3d at 228; *Thornton*, 447 S.W.3d at 38. However, if METRO did not "present conclusive proof of facts negating subject matter jurisdiction, the burden d[id] not shift to [Smith] to establish the existence of an issue of material fact." *Thornton*, 447 S.W.3d at 38.

METRO presented Hudson's deposition testimony, in which he swore that he has never carried a .22 caliber weapon. It is undisputed at this stage that Smith's alleged injury was caused by a .22 caliber bullet. Assuming without deciding that METRO's evidence on the jurisdictional issue of causation was sufficient to meet its initial burden, Smith presented evidence sufficient to raise a genuine issue of material fact regarding causation. *See id.* In response to METRO's plea, Smith attached a police report concluding that Hudson was the likely shooter, that the shot came from Hudson's approximate location, and that no one other than Hudson was in a position to have shot Smith. The trial court properly denied METRO's plea to the jurisdiction on this issue.

## C.    Official immunity

METRO also argues it cannot be liable for Hudson's actions because Hudson is protected by official immunity. Official immunity is an affirmative defense, and as such, the defendant has the burden of establishing every element of the defense.

15

*City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994); *City of Pasadena v. Belle*, 297 S.W.3d 525, 530 (Tex. App.—Houston [14th Dist.] 2009, no pet.). When a governmental unit's liability under section 101.021(2) is predicated on respondeat superior for its employee's negligent use of tangible personal property, the governmental unit's liability is derivative of the employee's liability. *DeWitt*, 904 S.W.2d at 654. If a governmental employee can assert official immunity, the governmental entity's sovereign immunity is not waived because, were it a private person, it would be entitled to assert any affirmative defense its employee can assert. *Id.*; *City of Houston v. Jenkins*, 363 S.W.3d 808, 814 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Under an official immunity defense, governmental employees are immune from lawsuits arising from (1) the performance of discretionary duties (2) within the scope of their authority, (3) provided the employee acted in good faith. *Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *Belle*, 297 S.W.3d at 530. Whether a police officer acted in good faith must be measured against an objective standard of reasonableness, without regard to the officer's subjective state of mind. *Belle*, 297 S.W.3d at 530; *see Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002); *William Marsh Rice Univ. v. Refaey*, 495 S.W.3d 531, 538–39 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). To establish good faith as a matter of law, an officer must show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his actions were justified. *Telthorster*, 92 S.W.3d at 465; *Refaey*, 495 S.W.3d at 538–39.

METRO claims it has official immunity "[b]ecause Hudson has official immunity." To demonstrate Hudson's official immunity, METRO asserts that (1) "Hudson denies shooting Smith;" (2) Smith did not see who shot him; (3) writing tickets is a discretionary function; and (4) Hudson and Smith were acting in the

course and scope of their employment when "someone" shot Smith.

METRO does not reference or present any evidence demonstrating Hudson acted in good faith. In the official immunity context, "good faith" requires the movant to "prove that a reasonably prudent officer might have believed his actions were justified under the circumstances." *Belle*, 297 S.W.3d at 530. This is an objective standard that disregards the officer's subjective state of mind. *Id.* Hudson's subjective belief that he did not shoot Smith does not objectively demonstrate that a reasonably prudent officer might have believed accidently shooting Smith while writing traffic tickets was somehow justified. Further, Smith's lack of knowledge regarding who shot him is irrelevant to whether Hudson acted in good faith. METRO's other assertions in support of official immunity are likewise irrelevant to good faith. Having failed to show that Hudson acted in good faith, METRO failed to establish Hudson, and in turn METRO, was entitled to official immunity. Having found all of METRO's arguments without merit, we overrule METRO's issue.

### III. CONCLUSION

The trial court did not err in denying METRO's plea to the jurisdiction. Accordingly, we affirm the trial court's interlocutory order.

/s/     Marc W. Brown
        Justice

Panel consists of Justices Busby, Brown, and Jewell.

17