

# NUMBER 13-21-00149-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF BROWNSVILLE,                                               **Appellant,**

v.

DANIEL REGLADO, INDIVIDUALLY
AND AS NEXT FRIEND OF D.A.R.,
A MINOR, CECILIA P. ALONSO,
AND SYLIVA VELA,                                           **Appellees.**

### On appeal from the 444th District Court
### of Cameron County, Texas.



# NUMBER 13-21-00150-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF BROWNSVILLE,                                                     Appellant,

v.

LILI NEZZER,                                                            Appellee.

**On appeal from the 444th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Justice Benavides**

In these related interlocutory appeals from the denial of pleas to the jurisdiction,

appellant the City of Brownsville argues that its governmental immunity was not waived

under the Texas Tort Claims Act (TTCA). We reverse and render.

## I. BACKGROUND

On March 24, 2018, appellant co-sponsored a binational ten-kilometer footrace with the City of Matamoros, Mexico. At around 8:05 a.m. that day, the wind reached gusts of about forty miles per hour, and the metal structure marking the start of the race fell and struck appellees Cecilia P. Alonso, Daniel Reglado, D.A.R., a minor, Sylvia Vela, and Lili Nezzer.[1] Appellees sued appellant, as well as Fundacion Teleton USA and Sistema Infantil Teleton USA (the Organizations), which provided support and resources for the race, and Sabas Lopez, an independent contractor whom appellant hired to erect and assemble the metal structure.

In their pleadings, appellees alleged causes of action against appellant for both negligent use or condition of tangible personal property and for premises defect. Appellees posed two theories for the downfall of the structure: (1) the structure was not properly anchored to prevent it from falling, and/or (2) the banner attached to the structure "acted as a sail to bring the trusses down." As to appellant's immunity, appellees alleged that appellant was performing a proprietary, as opposed to governmental, function at the time the tort occurred. Alternatively, appellees alleged that appellant's immunity had been waived under the TTCA.

On December 14, 2020, appellant filed a plea to the jurisdiction as to each appellee, challenging both the pleadings and the existence of certain jurisdictional facts. Appellant contended that it performed a governmental function by hosting the race, the

---

[1] The claims brought by appellees Alonso, Reglado (in his individual capacity and as next friend of D.A.R.), and Vela are at issue in appellate cause number 13-21-00149-CV. The claims brought by appellee Nezzer are at issue in appellate cause number 13-21-00150-CV.

appellees had alleged a premises defect claim, and appellant's immunity was not waived under the TTCA.

Attached as evidence to appellant's plea to the jurisdiction was Ramiro Gonzalez's deposition. In his deposition, Gonzalez identified himself as the director of government and community affairs for the City of Brownsville. Gonzalez's duties included "[h]andl[ing] all external relations [of] the city with regards to local, state, and federal agencies— agencies and elected officials. And . . . special projects as assigned." Pertinently, Gonzalez was also the "race organizer or the lead on the race." Although appellant partnered with the City of Matamoros and the Organizations to host the event, according to Gonzalez, "[t]he [C]ity [of Brownsville] was in the lead role in this race." Appellant "received no financial benefit" from hosting the race, but Gonzalez averred that one benefit appellant received was "the [g]oodwill between two cities and . . . let's say a cultural benefit."

Gonzalez knew that "[o]ne of the first things [he] need[ed] [was] a gate, a starting gate" for the race. Therefore, Gonzalez contacted Lopez, an independent contractor in the area who had experience building trusses and printing banners. Lopez provided appellant with an estimate that specified he would supply "ASSEMBLY OF TRUSSING AT [THE] STARTING POINT OF EVENT," "ALL NECESSARY BRACKETING AND ANGLED SUPPORTS TO HOLD UP STRUCTURE," and a "BANNER WITH DIGITAL PRINTED LOGO INSTALLED ONTO TRUSSING." The estimate also "INCLUDE[D] INSTALLATION AND REMOVAL OF ALL ITEMS LISTED ABOVE." Appellant ultimately hired Lopez to build the structure in question.

4

Appellant also attached Lopez's deposition to its plea to the jurisdiction. In it, Lopez admitted that, prior to this event, he had never installed a similar structure that had banners on it. Lopez acknowledged that if the banners were not installed on the structure, it likely would not have fallen. However, Lopez also stated that he had worked with appellant before and had never had a similar structure fall in the past. He also stated that he had failed to anchor trusses before without incident. Lopez affirmed that on the day of the race, three city workers, whom he could not identify, helped him with the installation of the trusses.

The trial court ultimately denied appellant's plea to the jurisdiction for each appellee, and these interlocutory appeals followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.     PLEA TO THE JURISDICTION

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat an action without regard to whether the claims asserted are meritorious. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject matter jurisdiction is a question of law, and we review a trial court's ruling on a plea to the jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Immunity is properly asserted in a plea to the jurisdiction since sovereign immunity deprives a trial court of jurisdiction. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Miranda*, 133 S.W.3d at 225–26. A plea to the jurisdiction may challenge the sufficiency of the pleadings, or it might include evidence which challenges the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 225–26; *City of El Paso v. Cangialosi*, 632

5

S.W.3d 611, 619 (Tex. App.—El Paso 2020, no pet.). When, like here, the plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 225–26; *Cangialosi*, 632 S.W.3d at 619. "The burden is on the governmental unit as the movant to meet the standard of proof." *City of Westworth Village v. City of White Settlement*, 558 S.W.3d 232, 240 (Tex. App.—Fort Worth 2018, pet. denied). We also review de novo whether a plaintiff has sufficiently alleged facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Id.*

### III. PROPRIETARY/GOVERNMENTAL DICHOTOMY

By its first sub-issue, appellant contends it was performing a governmental function and is thus immune from suit unless appellees can establish a waiver of immunity under the TTCA. Appellees counter that appellant was performing a proprietary function and no immunity exists.

### A. Standard of Review & Applicable Law

"Texas is inviolably sovereign." *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429 (Tex. 2016). Texas's political subdivisions—such as counties, municipalities, and school districts—share in the state's inherent sovereignty. *Id.* at 429–30. "When analyzing a cause of action brought under the [TTCA] against a municipality, the initial determination to be made is whether the municipality's action or inaction involves a proprietary function or a governmental function." *Carrasco v. City of El Paso*, 625 S.W.3d 189, 195 (Tex. App.—El Paso 2021, no pet.). "A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions." *Tooke v. City of Mexia*,

6

197 S.W.3d 325, 343 (Tex. 2006). Governmental functions are "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a). Proprietary functions "are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *Id.* § 101.0215(b). This "language seems plain enough, but the rub comes when it is sought to apply the test to a given state of facts." *City of Houston v. Wolverton*, 277 S.W.2d 101, 103 (Tex. 1955).

The TTCA contains non-exhaustive lists of functions the legislature has already determined to be either governmental or proprietary. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215. "If a function is included in the nonexclusive list of governmental functions, it has been deemed governmental in nature by the legislature and we have no discretion or authority to hold otherwise." *Rogers v. City of Houston*, 627 S.W.3d 777, 795 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

**B.      Factor Analysis**

Whether appellant is immune from suit is contingent on whether appellant was performing a governmental or proprietary function when it hosted the race. *See Tooke*, 197 S.W.3d at 343. Hosting a footrace is not included in either the list of governmental or proprietary functions included in the TTCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215. When a municipality's action is not relegated to the non-exhaustive lists of governmental and proprietary functions in the TTCA, we consider four factors in determining whether the activity is governmental or proprietary. *Wasson Ints., Ltd. v. City*

7

*of Jacksonville,* 559 S.W.3d 142, 150 (Tex. 2018) ("*Wasson II*"). Specifically, we address whether appellant's action was: (1) mandatory or discretionary; (2) intended to primarily benefit the general public or appellant's residents, (3) done on the State's behalf or on its own behalf; and (4) sufficiently related to a governmental function to render the act governmental even if it would otherwise have been proprietary. *Id.*

### 1. Appellant's Act was Discretionary

Appellant concedes that it was engaged in a discretionary function. Prior to the binational race, appellant had not hosted a race any time within the past nine and a half years. Gonzalez acknowledged in his deposition that appellant had no plans to host a race in the future. There is no evidence in the record that appellant was enjoined by law to host the race. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a). Therefore, this factor indicates appellant's act was proprietary.

### 2. Appellant's Act Primarily Benefited the General Public

Generally, a city's governmental functions are ones that primarily benefit the general public while its proprietary functions benefit its own residents. *See id.*; *Wasson II*, 559 S.W.3d at 151. There were many benefits amassed as a result of appellant hosting the race. In his deposition, Gonzalez acknowledged that appellant received a benefit from the race in the form of "[g]oodwill" between the "two cities" of Matamoros, Mexico, and Brownsville, Texas.

The record shows that the race participants were not limited to Brownsville residents and that both Texas and Mexico residents participated in the race. Indeed, appellees Reglado and Vela were from Matamoros, Mexico and Brownsville, Texas,

8

respectively. Thus, the city's act was not "primarily for the benefit of those within the corporate limits of the municipality." *See Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986). Gonzalez affirmed that "[h]undreds of thousands of people were invited to participate in the event," and that parts of the race were broadcast on television. *See id.* (providing that proprietary functions are functions primarily for the benefit of those within the municipality). But ultimately, the record reflects that the main purpose of the race from appellant's perspective was "the fundraising effort," of which appellant received no share. Appellant's co-defendant, Fundacion TeletonUSA, a charitable organization, was the only financial benefactor. *See Wasson II*, 559 S.W.3d at 152 (holding that the City's objective in leasing property to raise funds for the City's budget indicated it entered into the lease primarily to benefit its own residents, not the general public). Based on this evidence, the record indicates that the general public, rather than appellant's residents, primarily benefited from the race. *See id.* at 151–52. Therefore, this factor indicates appellant's act was governmental.

### 3. Appellant Acted on its Own Behalf

Governmental functions are those in which the municipality acts as a branch of the State or as an arm of the government, rather than on its own behalf. *Id.* at 152. The record indicates that appellant communicated with "Custom[s] and Border Protection" to ensure that the runners would be able to cross back and forth between Texas and Mexico during the race. Appellant also worked with Cameron County to use the international bridge stretching between Texas and Mexico, which Cameron County owns, during the race.

9

However, overall, appellant's act in hosting the race was done on its own, rather than as an arm of the government. Gonzalez did not indicate that the "goodwill" created by the race was between Texas and Mexico, but solely between the two cities. Funding for the race came from appellant's own coffers, not from any agency of the State. *See Hays St. Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 706 (Tex. 2019). Therefore, this factor slightly weighs in favor of finding this act to be proprietary.

### 4. Appellant's Act was Sufficiently Related to a Governmental Function to Render it Governmental Nonetheless

To be sufficiently related to a governmental function to render appellant's act governmental nonetheless, it must be "closely related to or necessary for performance" of the governmental functions designated by statute. *Wasson II*, 559 S.W.3d at 153 (quoting *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 356 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). Appellees liken the race to "amusements owned and operated by the municipality," but there is no evidence in the record that appellant "owned" the race. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b)(2); *Nguyen v. SXSW Holdings, Inc.*, 580 S.W.3d 774, 783 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

Appellant characterizes the binational race as being akin to "parks" or a "recreational facility." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(13), (23). We agree with this characterization. The terms "parks" and "recreational facilities" in § 101.0215(a) are afforded broad interpretations. *City of Plano v. Homoky*, 294 S.W.3d 809, 814–15 (Tex. App.—Dallas 2009, no pet.); *see Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3)(L) (defining "[r]ecreation" to include "any other activity associated with enjoying nature or the

10

outdoors"). Hosting a cultural event like the binational race is also similar to events the public may enjoy at "civic, convention centers, or coliseums." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(16). This factor weighs in favor of designating this activity as a governmental function.

## C.     The Nature and Purpose of Immunity

In this case, because the factors do not uniformly point to a proprietary or governmental function we must consider "immunity's nature and purpose and the derivative nature of [the] city's access to that protection." *Wasson II*, 559 S.W.3d at 154. "[I]mmunity preserves the separation of powers by preventing the judiciary from interfering with the policymaking responsibilities of other branches of government and seeking to control their choices regarding the use of public funds." *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 739 (Tex. 2020). "A lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006).

A municipality is permitted to use its general revenues to fund recreational programs. *See* TEX. LOC. GOV'T CODE ANN. §§ 332.002, 332.004(a); *see also* TEX. TAX CODE ANN. § 321.506 (stating that certain tax revenue "may be used for any purpose for which the general funds of the municipality may be used"). Diverting tax resources that are permitted to be spent on recreational programs to instead be spent on "defending lawsuits and paying judgments" would certainly hamper this municipal function. *See Reata Constr. Corp.*, 197 S.W.3d at 375. A determination that appellant's function was

11

proprietary, rather than governmental, would thus do nothing to further the "nature and purpose" of the city's immunity. *See Wasson II*, 559 S.W.3d at 154.

The dichotomy is a binary choice; either appellant was performing a governmental function by hosting the race or it was performing a proprietary function. On balance, appellant's actions were more closely aligned with "purely governmental matters solely for the public benefit" rather than those done in "its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government." *Tooke*, 197 S.W.3d at 343 (quoting *Dilley v. City of Houston*, 222 S.W.2d 992 993 (Tex. 1949)).

Having reviewed and applied the analysis set forth in *Wasson II*, we conclude that appellant performed a governmental function by hosting the race and the TTCA therefore applies. *See Wasson II*, 559 S.W.3d at 150–54.

## IV.     TTCA CLAIMS

Because we have concluded that the race was a governmental function, the burden to affirmatively show that appellant's immunity was waived under the TTCA was on the appellees. *See Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019). Appellant contends that appellees were required to plead a claim for relief for either negligent use or condition of personal tangible property or for premises defect, not both. Appellant further asserts that appellees have neither a viable negligent use or condition of personal tangible property claim nor a viable premises defect claim.

## A.     Pleading Defects

"The [TTCA] . . . applies different standards of care upon a governmental unit for negligence claims based on 'a condition or use of tangible personal property' and claims

based on a 'premises defect.'" *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385 (Tex. 2016). "The [TTCA]'s scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in [§] 101.022 by re-casting the same acts as a claim relating to the negligent condition or use of tangible property." *Miranda*, 133 S.W.3d at 233. Therefore, appellees cannot assert a claim that is both a premises defect claim and one relating to a condition or use of tangible property. *Sampson*, 500 S.W.3d at 385.

To determine whether the TTCA waives appellant's immunity for appellees' claim, we must first determine the correct nature of appellees' claim for relief. *See id.* Whether appellees' claim is based on a premises defect or a negligent use or condition of tangible personal property is a legal question that we review de novo. *See id.*; *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 469 (Tex. 2017).

## B.     Characterization of Claims

The TTCA expressly waives immunity for governmental units in three areas: (1) auto accidents caused by public employees; (2) injuries arising out of a condition or use of tangible personal property; and (3) premises defects. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021.

> The distinction between a use or condition of tangible personal property claim as opposed to a premises defect claim, . . . is whether it was the contemporaneous, affirmative action or service (use) or the state of being (condition) of the tangible property itself that allegedly caused the injury, or whether it was a condition created on the real property by the tangible personal property (a premises defect).

*Sampson*, 500 S.W.3d at 390.

13

Real property includes "land, and generally whatever is erected or growing upon or affixed to land." *Miranda*, 133 S.W.3d at 229–30. In their amended pleadings, appellees alleged that "[a]s part of the organizational and hosting duties it undertook, [appellant] hired Lopez to erect the trusses and signs that fell on [appellees]." Premises is not defined by the TTCA. However, another section of the Texas Civil Practice and Remedies Code defines premises to include "land, roads, water, watercourse, private ways, and buildings, structures, machinery, and equipment attached to or located on the land, road, water, watercourse, or private way." TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(2).

Appellees rely on authority from our sister courts to assert that "one factor courts examine in determining whether a case involves a 'premises defect' is the permanent or temporary nature of the item in question." *See City of Houston v. Rushing*, 7 S.W.3d 909, 916 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Tex. Dep't of Transp. v. Henson*, 843 S.W.2d 648, 652 (Tex. App.—Houston [14th Dist.] 1992, pet. denied). The test laid out by the supreme court to determine whether a claim is one for premises defect or negligent activity is whether the "plaintiff alleges injury as a result of a physical condition or defect left on the premises, 'not as a contemporaneous result of someone's negligence.'" *See Levine*, 537 S.W.3d at 472 (quoting *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997)); *see also Tex. Health & Human Servs. Comm'n v. McRae*, No. 05-14-00894-CV, 2015 WL 4546927, at *3 (Tex. App.—Dallas 2015, no pet.) (mem. op.) ("[T]he removability or temporary nature of a piece of property on a premises does not convert a premises-defect claim into a viable negligence claim."). We note that the cases cited by appellees were also decided prior to *Sampson*, which held

14

that even "an item of tangible personal property may create a condition of the premises, resulting in a premises defect claim." *See Sampson*, 500 S.W.3d at 389.

Therefore, even if we concluded that the structure is tangible personal property, the nature of appellees' claims is still based on the principle that the use or condition of the tangible personal property created a dangerous condition on real property; namely, a falling hazard. *See Harris County v. Shook*, 634 S.W.3d 942, 952 (Tex. App.—Houston [1st Dist.] 2021, pet. filed); *see also Constantino v. Dall. Cnty. Hosp. Dist.*, No. 05-15-01273-CV, 2016 WL 6161748, at *5 (Tex. App.—Dallas Oct. 24, 2016, no pet.) (mem. op.). Nevertheless, appellees assert their claim is correctly characterized as one for negligent use or condition of tangible personal property. We disagree.

First, "use" generally means "to put or bring into action or service; to employ for or apply to a given purpose." *Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001). According to Lopez, three City employees helped "bring" the structure "into action" by installing supports on the structure. However, the city employees' act of helping to erect the structure did not occur contemporaneously with the injuries that appellees sustained. Therefore, the fact that city employees helped to install the structure does not support a "use" claim under the TTCA. *Sampson*, 500 S.W.3d at 388–89 ("[T]o state a 'use' of tangible personal property claim under the [TTCA], the injury must be *contemporaneous* with the use of the tangible personal property . . . .").

Alternatively, appellees allege that the structure was lacking an integral safety feature.[2] *See Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996); *Lowe v.*

---

[2] Our sister courts have struggled to determine whether the lack of an integral safety component represents a "use" or "condition" of tangible personal property. *See Tex. State Tech. Coll. v. Beavers*, 218

15

*Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976); *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex. 1989). This type of "use" has been restricted by the supreme court. *See Clark*, 923 S.W.2d at 585 ("The precedential value of [*Lowe* and *Robinson*] is . . . limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries."). To support a "use" claim under the TTCA, a safety feature may not merely be inadequate but must be completely lacking. *Id.*

What a cruel prism hindsight is. In retrospect, we can condemn Lopez for attaching an unperforated banner or failing to anchor the structure. However, failing to provide an

---

S.W.3d 258, 264 n.1 (Tex. App.—Texarkana 2007, no pet.); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 223 (Tex. App.—Fort Worth 2003, pet. denied) ("Thus, a scoop was an integral safety component of the ice barrels. The lack of a scoop was an intentional or inadvertent state, i.e., a condition, of the ice barrels."); *Tex. Dep't of Crim. Just. v. Diller*, 127 S.W.3d 7, 12 (Tex. App.—Tyler 2002, pet. denied) ("Appellee has not complained about the condition of the bag used by her son. She does not claim it was defective or lacked an integral safety component."); *see also Solis v. Tex. Dep't of Crim. Just.*, No. 10-09-00065-CV, 2009 WL 4357259, at *1 (Tex. App.—Waco Dec. 2, 2009, pet. denied) (mem. op.) ("A governmental unit may waive immunity under the 'condition' of tangible personal property portion of section 101.021(2) if it provides equipment that is defective because it lacks an integral safety component.").

This is perhaps because the supreme court's precedent is relatively opaque as to whether the lack of an integral safety feature is a negligent use or condition. *Compare San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 245 (Tex. 2004) ("Respondents do not complain of the condition of Cowan[']s walker and suspenders. They do not assert, for example, that the walker and suspenders were defective or that they lacked some safety feature."), *with Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996) (holding that cases where a governmental unit furnished property lacking an integral safety component "represent perhaps the outer bounds of what we have defined as *use* of tangible personal property" (emphasis added)). In *Sampson*, the supreme court explained that a defective or inadequate condition of tangible personal property is different than a "use" of tangible personal property which involves furnishing property that lacks an integral safety component. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 n.3 (Tex. 2016). However, the supreme court has not provided explicit guidance as to how we might differentiate between the two. *See id.* In any event, we agree with our sister court that:

> Whether the requirement is analyzed under the "condition" or "use" section of the statute, the Texas Supreme Court has made it clear that, unless the governmental agency has "used" tangible personal property in some other manner so as to waive immunity, merely supplying the property for another's use, without more, does not waive immunity unless the supplied property is completely lacking an integral safety component.

*Beavers*, 218 S.W.3d at 264 n.1.

16

item with a more effective safety feature does not waive a governmental unit's immunity. *Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580, 584 (Tex. 2005). The contention that the city employees who helped erect the structure by placing barricades around it and installing support features should have also helped Lopez anchor the structure and/or should have known to remove the banners from the structure is a claim that appellant provided tangible personal property that was merely inadequate, not defective. *See Univ. of Tex. Sys. Operating v. Palomino*, 498 S.W.3d 711, 717 (Tex. App.—El Paso 2016, pet. denied). Accordingly, appellees have failed to show that their claims fall within the TTCA's "use" exception to governmental immunity under the integral safety component doctrine.

Second, a condition of tangible personal property requires "an allegation of defective or inadequate property when 'some condition' of property is a contributing factor to the injury." *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex. 1983). "Condition" has been defined as "either an intentional or an inadvertent state of being." *Sampson*, 500 S.W.3d at 388 (quoting *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49 (Tex. 2015)). "For a defective condition to be the basis for complaint, the defect must pose a hazard in the intended and ordinary use of the property." *Dallas County. v. Posey*, 290 S.W.3d 869, 872 (Tex. 2009).

Appellees do not cite any authority to support the notion that a tendency to be felled by the wind is a defective condition of tangible personal property. In truth, it was not the structure's "state of being" that caused a dangerous condition. Instead, it was the structure's placement on the premises. *See Sampson*, 500 S.W.3d at 391; *see also Constantino*, 2016 WL 6161748, at *5 (holding that the "placement" of a television

17

"created the dangerous condition of the room, in this case a falling hazard" and that appellant's claim was therefore properly characterized as a premises defect). If the structure had been wrapped in barbed wire, that would certainly be a condition that made the structure itself more dangerous. *See Sampson*, 500 S.W.3d at 391 (noting in dicta that a cord "frayed with exposed wire" would be an example of a defective condition); *Posey*, 290 S.W.3d at 872 ("[T]he exposed wires in this case might have posed an electrical hazard to an ordinary user of the telephone."). The structure's falling hazard in this case, however, created a dangerous condition on the premises.

Regardless of the nature of the property, the dangerous condition that was created was a real-property condition. We therefore conclude that appellees' claims are for a premises defect.

## C. Premises Defect Claim

To succeed on a premises defect claim, appellees as licensees were required to prove that: (1) a condition of the premises created an unreasonable risk of harm to the licensees; (2) the governmental unit actually knew of the condition; (3) the licensees did not actually know of the condition; (4) the governmental unit failed to exercise ordinary care to protect the licensees from danger; and (5) the governmental unit's failure was a proximate cause of injury to the licensee. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

Appellant argues that "given that the trusses and signage at issue were not owned, occupied, or controlled by Appellant City of Brownsville, Appellee's [sic] claims fail as a matter of law . . . ." However, "[t]he relevant inquiry is whether [appellant] assumed

18

sufficient control over the part of the premises that presented the alleged danger so that the [appellant] had the responsibility to remedy it." *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). There is no requirement that the control be exclusive. *See Levine*, 537 S.W.3d at 479.

Although it is undisputed that the street the structure was built on belonged to Texas Southmost College, appellant's own evidence indicated that Texas Southmost College granted appellant "[u]sage of TSC grounds to run the route." Gonzalez acknowledged that appellant selected the location of the structure, appellant had the power to move the gate, appellant had the power to exclude people from the area where the structure fell, appellant made decisions about what the structure looked like, and appellant assumed responsibility for safety at the race. Lopez also testified that three city employees allegedly helped to erect the trusses. Therefore, appellant had sufficient control over the premises so that it was entrusted with the responsibility to remedy potential defects. *See Brown*, 80 S.W.3d at 556.

"With premises defects, liability is predicated not upon the actions of the governmental unit's employees but by reference to the duty of care owed by the governmental unit to the claimant . . . ." *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995). Appellees presented evidence that they paid for the use of the premises and alleged that the duty of care owed to them was that which is owed by a private person to an invitee. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a) ("Except as provided in Subsection (c), if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless

19

the claimant pays for the use of the premises."). However, there is undisputed evidence that the structure was located in the middle of the street. Therefore, regardless of appellees' payment for use of the premises, the duty of care owed to them was that which a private person owes to a licensee. *See id.* § 101.022(c) ("If a claim arises from a premises defect on a toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property.").

To prove that a governmental unit had actual knowledge of an unreasonable risk of harm, a licensee must show that the governmental unit actually knew of the dangerous condition at the time of the accident. *See Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2011). "Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex. Pan-Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008).

In his deposition, Gonzalez stated that he had the opportunity to see the structure when it had been completed. He swore that he did not "notice any instability with it," he did not "notice it swaying with the wind," and that "it looked like it was okay." Gonzalez also stated that he did not think about whether the structure might be susceptible to wind "[b]ecause he hired a professional to do it" and that because "[Lopez] set[] up the trusses and he set up the banners, and he ha[d] done it before—that's just not something that [Gonzalez] thought about as far as like poking holes in [the banner]."

20

Given appellant's evidence, it was appellees' burden to raise a material fact as to jurisdiction. *See Sampson*, 500 S.W.3d at 393. Appellees alleged in their pleadings that appellant did have actual knowledge of the premises defect, but they provided no evidence of such knowledge in their response to appellant's plea to the jurisdiction nor have they asserted on appeal that appellant had actual knowledge. Lopez stated that three city employees were near the start area when the structure fell. However, mere proximity to the defect is not evidence of actual knowledge. *See id.* at 396 (quoting *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006)).

No evidence exists in the record that appellant had any knowledge that the structure was unstable at the time of the accident. Evidence that a perforated banner or an anchored structure would have been better is not evidence that appellant had actual knowledge that the structure in its chosen form was dangerous. *See id.* at 396. Because appellant did not have actual knowledge that the structure was unstable, appellant's immunity was not waived under the TTCA. *See Payne*, 838 S.W.2d at 237; *Tooke*, 197 S.W.3d at 343; TEX. CIV. PRAC. & REM. CODE ANN. § 101.001–.109. We therefore hold that the trial court erred in denying appellant's plea to the jurisdiction.

## V.    CONCLUSION

We reverse and render judgment dismissing appellees' claims against appellant.

GINA M. BENAVIDES
Justice

Delivered and filed on the
23rd day of June, 2022.